UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2022 JUL -8 AM 10:16

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SOLERA SPECIALTY PHARMACY, LLC,<br><br>Defendant | Criminal No. 22cr10150<br><br>Violation:<br><br>Count One: Health Care Fraud<br>(18 U.S.C. § 1347)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(7)) |

## INFORMATION

At all times relevant to this Information:

### General Allegations

1. The defendant, SOLERA SPECIALTY PHARMACY, LLC ("Solera"), was a Florida limited liability company with its principal place of business in Pompano Beach, Florida.

2. Solera operated a specialty pharmacy that dispensed high-cost treatments that are less commonly available at traditional retail pharmacies, such as drugs that treat chronic illnesses like HIV, Hepatitis C, and rheumatoid arthritis.

3. Solera employed several individuals who held the title of "Patient Navigator." Among other duties, Patient Navigators worked on completing and submitting prior authorization requests for drugs that Solera dispensed.

4. Evzio was a prescription naloxone hydrochloride injection used to treat a person known or suspected to have had an opioid overdose. Evzio delivered a single dose of the drug naloxone via a voice-guided, hand-held auto-injector.

1

5.  The Medicare program ("Medicare") is a federal program that provides free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare is a "Federal health care program" as defined in 42 U.S.C. § 1320a-7b(f) and a "health care benefit program" as defined in 18 U.S.C. § 24(b). Individuals who receive benefits under Medicare are commonly referred to as "beneficiaries."

6.  Medicare is subdivided into multiple parts. Medicare Part D is an optional program that, for a monthly premium, provides coverage for the cost of prescription drugs. This coverage is provided by insurance companies and other private companies that Medicare approves.

7.  In the prescription drug context, insurers may direct providers to seek prior authorization, a process which requires the provider to submit additional clinical information justifying the prescription before insurers will agree to pay. Prior authorization forms commonly ask providers whether a patient to whom a drug has been prescribed is intolerant to (or has already tried but failed on) a less costly alternative therapy. Ordinarily, a physician or the physician's office completes a prior authorization request and sends it to the insurer with the physician's signature.

8.  Congress incorporated co-payment obligations ("co-pays") into Medicare to give patients an incentive to choose the most cost-effective therapies. When a pharmacy dispenses a medication to a Medicare beneficiary, the pharmacy is obligated to collect any co-pay the beneficiary owes.

9.  The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(f), prohibits any person or entity from offering, making, soliciting, or accepting remuneration, in cash or in kind, directly or

2

indirectly, to induce or reward any person for purchasing, ordering, or recommending or arranging for the purchasing or ordering of federally-funded medical goods or services. Money and other forms of financial subsidies that can be used to pay or waive Medicare co-pays constitute remuneration under the Anti-Kickback Statute.

### Scheme to Defraud

10. Solera began dispensing Evzio in or around January 2017, including to Medicare beneficiaries. Solera continued dispensing Evzio until in or around May 2018.

11. Evzio was significantly more expensive than other prescription naloxone products with which it competed. Whereas Evzio's list price was $4,100 for a pack of two auto-injectors, the competing Narcan nasal spray was available for roughly $150 per two-pack, and generic naloxone was available for less than $12 per dose.

12. Pharmacies that dispensed Evzio could earn significant profit margins on Evzio—typically about $400 per Evzio pack.

13. Solera knew that many Medicare Part D plans would not authorize payment for Evzio without a prior authorization request.

14. Solera completed Evzio prior authorization forms in place of the prescribing physicians, including instances in which Solera staff signed the prior authorization forms without the physician's authorization. Solera then submitted the forms to insurers—including to Medicare Part D plans—as if Solera were the physician. On dozens of Evzio prior authorization request forms, Solera staff listed Solera's fax number in a field that requested the prescribing physician's fax number. In addition, Solera listed the name of a Solera employee in a field on the prior authorization forms that called for the prescribing physician's office contact. Solera did

so to ensure that insurers would contact Solera—and not the listed prescribing physician—when communicating about the prior authorization request.

15. In addition to purporting to be the physician's office, Solera submitted Evzio prior authorization requests to insurers that contained false clinical information to secure approval of the prior authorization and payment for the more expensive drug. For example, Solera staff filled out and submitted dozens of Evzio prior authorization request forms that falsely asserted that patients had previously tried and failed both Narcan and naloxone. Furthermore, Solera staff falsely stated on Evzio prior authorization request forms that patients had previously been hospitalized or resided in areas with long wait times for emergency services. At times, Solera staff re-used prior authorization request forms with such false justifications by whiting out the patient's name and unique identifiers but leaving the purportedly patient-specific clinical details unchanged.

16. Insurers, including Medicare Part D plans, approved dozens of false Evzio prior authorization requests that Solera submitted. Solera understood that, had the insurers known that the forms contained false information, they would not have authorized and paid for the prescriptions.

17. In addition, Solera knew that patients prescribed Evzio frequently had co-payment obligations. Insurance plans, including Medicare Part D plans, obligated Solera, as the dispensing pharmacy, to collect co-payments. For Evzio, co-payments could range from a few dollars to hundreds of dollars, depending on the terms of the patient's insurance coverage.

18. For commercially insured patients, Evzio's manufacturer offered a co-payment assistance program that waived the patient's out-of-pocket expense for the drug. Solera knew

that such co-payment assistance programs could not be applied to subsidize or waive out-of-pocket expenses for beneficiaries of government health care programs like Medicare, and that applying such subsidies would violate the federal Anti-Kickback Statute.

19. Solera knew that government health care programs like Medicare do not authorize payment for a prescription if the claim for payment resulted from a violation of the Anti-Kickback Statute. Nevertheless, Solera waived Medicare beneficiary co-payment obligations for Evzio on numerous occasions without analyzing whether the beneficiary had a genuine financial hardship.

20. Solera understood that, had the Medicare Part D plans known that Solera had waived Evzio co-payment obligations absent individualized considerations of financial hardship, they would not have authorized payment for those prescriptions.

## COUNT ONE
### Health Care Fraud
### (18 U.S.C. § 1347)

The United States Attorney charges:

21. The United States Attorney re-alleges and incorporates by reference paragraphs 1 – 20 of this Information.

22. Between in or around January 2017 and May 2018, the defendant,

### SOLERA,

did knowingly and willfully execute a scheme and artifice to defraud Medicare, a health care benefit program as defined in 18 U.S.C. § 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under

the custody and control of, Medicare, in connection with the delivery of and payment for health care benefits, items, and services.

All in violation of Title 18, United States Code, Section 1347.

## CRIMINAL FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(7))

The United States Attorney further alleges:

23. Upon conviction of the offense in violation of Title 18, United States Code, Section 1347, set forth in Count One, the defendant,

SOLERA,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense. The property to be forfeited includes, but is not limited to the following:

   a. $436,667, to be entered in the form of a forfeiture money judgment.

24. If any of the property described in Paragraph 23, above, as being forfeitable pursuant to 18 U.S.C. § 982(a)(7), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C. § 982(b), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 23 above.

All pursuant to Title 18, United States Code, Section 982(a)(7).

RACHAEL S. ROLLINS<br>
UNITED STATES ATTORNEY

*/s/ David J. Derusha*

DAVID J. DERUSHA
ABRAHAM R. GEORGE
AMANDA P.M. STRACHAN
Assistant United States Attorneys
District of Massachusetts

Date:  July 8, 2022